# Bonner v. The State.

## *Indictment for Murder.*

1. *Evidence of motive and corroborative of accomplice.* — An accomplice having testified that he, defendant, and another, after entering into a conspiracy to compel deceased to leave the country, had gone to the latter's dwelling at night, and were throwing rocks at it, when deceased came out; that the third conspirator had then fired his gun against the house, and that witness had fired his into the air, but that he did not know which way defendant fired,—testimony of another witness as to a conversation overheard by him between defendant and the third conspirator was admissible for the purpose of disclosing a motive on the part of defendant for the offense charged; and, also, to corroborate the accomplice's testimony connecting defendant with the homicide.

2. *Evidence of Separate acts of conspirators.*—The separate, and, as between themselves, disconnected acts of conspirators in line with the common design and in furtherance of the conspiracy may be given in evidence against all and each of them.

3. *Same; case at bar.*—An accomplice may testify that after a conspiracy to compel deceased to leave the country had been formed, and the day before its consummation, he and another borrowed a gun which was used on the occasion of the homicide; and the objection to this evidence by defendant on the ground that he was not present at the time, nor shown to have known anything of the borrowing of the gun, is untenable.

[Bonner v. The State.]

4. *General exception to general charge of court.*—A general exception to the charge· of the court given *ex mero motu* is insufficient, unless every proposition therein is unsound.

5. *Charge as to measure of proof.*—A charge that "Unless the jury is convinced, beyond all reasonable chance of mistake, that the defendant was present when Higgins was killed, they must find him not guilty," is properly refused.

6. *Charge on the weight of Evidence.*—There is no· error in refusing requests to charge that a certain fact should "weigh but little" against the defendant, or that a certain other assumed fact "is a strong circumstance in the defendant's favor."

7. *Argumentative charge.*—A charge "that as reasonable men usually have a motive for what they do, or act from or by virtue of a motive, and that whereas men rarely, if ever, commit a grave offense like the one with which the defendant is charged, that therefore you are authorized to look to the fact, if it be a fact, that the state has failed to show a motive on the part of the defendant for the killing of Andrew J. Higgins, in making up your verdict, and in determining whether the defendant is guilty as charged," is properly refused.

8. *Misleading Charge.*—A charge that "every one charged with the commission of an offense against the law is presumed innocent until his guilt is established, and evidence sufficient to convict should not be a mere preponderance of probabilities, but should be so convincing as to lead the mind to the conclusion that the accused cannot be guiltless," may properly be refused as misleading.

9. *Party may withdraw given charge.*—It is not error to allow the solicitor to withdraw a charge, though the court has determined to give it, and has so endorsed on the charge.

APPEAL from the Circuit Court of Walker.

Tried before the Hon. JAMES J. BANKS.

The appellant was jointly indicted with John Bonner, for· the murder of Andrew J. Higgins, was tried separately, and convicted of murder in the first degree, and sentenced to the penitentiary for life.

On the trial of the cause, as is shown by the bill of exceptions, the State introduced evidence tending to show the killing of Andrew J. Higgins. Then the State introduced as a witness one Sam Key, who was a confessed accomplice in the killing of the said Andrew J. Higgins. This witness detailed the facts of the killing as follows: "The witness, together with Boge Bonner, the defendant, and Charley Morris went to the house of deceased, at night, for the purpose of rocking his house. and making him leave the country; they were all armed with shot guns; that they went up to within 75 or 80

yards of the house of deceased, and threw some rocks at his house, and deceased came out of his house with a gun, and fired it off.' And that Charley Morris fired his gun and witness heard the lead strike the house; and that witness fired his gun in the air; and that he did not know which way defendant fired his gun; and that the three men went off and left the house.'' The bill of exceptions then recites: ''The testimony of this witness further tended to show that that night when witness, Charley Morris and defendant met to go over to deceased's house, it was agreed between them that they would only throw rocks and hurt no one, unless they were crowded; then they were to stand them off. The testimony of this witness further tended to show that witness borrowed a shot gun from one —— Sherer on the evening before the killing.''

There was also evidence introduced by the State tending to corroborate the testimony of the witness Key. This evidence is sufficiently stated in the opinion. It was also shown that the defendant fled the country after the killing.

The evidence for the defendant tended to prove an *alibi*, and also tended to show that he did not make the threats testified to as having been made by him.

Upon the introduction of all the evidence, the defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) ''If the jury believe the evidence, they will find the defendant not guilty.'' (2.) ''Unless the jury is convinced beyond all reasonable chance of mistake that the defendant was present when Higgins was killed, they must find him not guilty.'' (3.) ''Any reasonable doubt, however slight and shadowy, is sufficient to require an acquittal.'' (4.) ''Any evidence indicating consciousness of guilt, of itself, should weigh but little, and ought to be considered by the jury with great caution.'' (5.) ''If the evidence fails to show any motive on the part of the defendant to commit the crime, I charge you, that in the absence of positive proof of defendant's guilt authorizing a conviction, such absence of motive is a strong circumstance in the defendant's favor, and may be considered by you in connection with the other exculpating evidence to generate a reasonable doubt of defen-

dant's guilt." (6.) "The court charges you, gentlemen of the jury, that as reasenable men usually have a motive for what they do, or act from or by virtue of a motive, and that, whereas, men rarely, if ever, commit a grave offense like the one with which the defendant is charged, that therefore you are authorized to look to the fact, if it be a fact, that the State has failed to show a motive on the part of the defendant for the killing of Andrew J. Higgins in making up your verdict, and in determining whether the defendant is guilty as charged." At the request of the defendant, the court gave, among others, the following charge : (10.) "Every one charged with the commission of an offense against the law is presumed innocent until his guilt is established, and the evidence sufficient to convict should not be a mere preponderance of probabilities, but should be so convincing as to lead the mind to the conclusion that the accused can not be guiltless."

The bill of exceptions then recites : "The solicitor then asked the judge to give the following charge in writing : If from all the evidence the jury believe it is possible that the defendant is not guilty, or perhaps the defendant is not guilty, this degree of uncertainty does not amount to a reasonable doubt and would not entitle the defendant to an acquittal. All that is required is, that the jury should, from all the evidence, believe beyond a reasonable doubt that the defendant is guilty ; and if you so believe, beyond all reasonable doubt, from the evidence that the killing occurred in this county and before the finding of the indictment, and that defendant killed deceased, or aided in his killing, you must find the defendant guilty, although you may also believe from the evidence that it is possible that he is not guilty. The presiding judge gave said charge and wrote thereon, "Given. James J. Banks, Judge." And read the said charge to the jury. The solicitor then, in the presence and hearing of the jury and before the jury had retired, asked leave of the court to withdraw said charge. The defendant objected. The court overruled the objection, and the defendant duly excepted. The presiding judge withdrew said charge from the jury and handed the charge to the solicitor and the charge was not taken out by the jury, and the defendant then and there duly excepted to the action of the court."

[Bonner v. The State.]

COLEMAN & BANKHEAD, for the appellant, discussed the following, among other propositions: 1. The acts and declaration of third parties not made in the presence of the defendant, nor shown to have been authorized by him, nor have been communicated to him, are not evidence against the defendant.—*Hall v. The State*, 51 Ala. 9.

2. Unless there is evidence sufficient *prima facie* to establish a conspiracy, neither the relationship between the parties nor the fact that they were in company when the offense was committed, is sufficient to bring such acts and declarations within the principle which governs the admissibility of the acts and declarations of conspirators as evidence against each other.—*Owens v. The State*, 74 Ala. 401; *McAnally v. The State*, 74 Ala. 9.

3. A party has no right to withdraw charges requested on which the judge has endorsed "given" or "refused." Acts of 1888-9, p. 90; *Redus v. The State*, 82 Ala. 53; *Miller v. Hampton*, 37 Ala. 342.

4. A charge is erroneous which authorizes a conviction of a criminal offense without consideration of the proof either of *venue* or the time of the commission of the offense.—*Bowden v. State*, 91 Ala. 61.

WM. C. FITTS, Attorney-General, for the State.—The first assignment of error on the part of the defendant is to the question asked by the solicitor of the witness Bell. "State whether or not Charlie Morris, and Boge Bonner said anything at the creek on Thursday morning before old man Higgins was killed." In the light of subsequent testimony, brought out by means of this question, its competency and relevancy are clearly established. Bonner was shown to have referred to both Higginses and to have used language, threatening to say the least, and revealing the animus or motive, that eventually urged the conspirators to the commission of their crime. —*Durrett v. The State*, 62 Ala. 434.

The answer to this question was also objected to as immaterial and irrelevant, but the objection is not well founded. The solicitor then asked "what was said by Charley Morris and Boge Bonner," and the question was objected to as immaterial and irrelevant, but the objection was not sustained. The answer to this question sets at rest all doubt as to the wisdom of the court's rul-

ing. The witness said "They were talking about the Higginses, exactly what he did not remember. Boge Bonner said 'That he guessed by the time it was got through with, that Side Higgins *would not want to have another one of the Bonners arrested;* that there would go enough there to clean them up; that if there was a little powder and shot wasted in this neighborhood, there would be peace and quiet.'" Defendant objected to allowing to be introduced what witness testified Bonner had said, and excepted to the ruling of the court. We repeat, this train of questions and answers is legitimate, material and essential, as it tends to show malice as motive, and in the light of events that followed, tended to connect the parties with the killing, and to fasten the guilt where it belonged.—*Hinds v. The State*, 55 Ala. 145. The act of one conspirator is the act of all, and all evidence is admissible that operates as a disclosure of their premeditated design.

Marion Davidson being put upon the stand was asked by the solicitor to "State whether or not Sam Key and Charlie Morris, on the evening before the killing, borrowed a gun from you." Defendant objected on the grounds that it was irrelevant, immaterial, because defendant was not shown to have known of the borrowing of the gun. The question complies with all the essentials of a relevant and material question. It tends to prove the issue, and to add a link to the chain of proof. 1 Green. Ev. page 83, par. 51 (a.) It is of no avail to the defendant and no valid objection to the question that he might not have known of the borrowing of the gun. "Each co-conspirator is liable for the overt acts of his confederates, committed in pursuance of the conspiracy, during its continuance."—2 Wharton Crim. Law, p. 245, sec. 1405; *Jackson v. The State*, 54 Ala. 234. "The declarations of one conspirator in furtherance of the common design are admissible against his co-conspirators." 2 Whar. Crim. Law, 245, sec. 1006. "Every act and declaration of each member of the confederacy, in pursuance of the original concerted plan, and with reference to the common object is, in contemplation of the law, the act and declaration of them all, and is therefore, original evidence against each of them."—1 Green. Ev. p. 165, sec. 3. The answer to this question was that Key and Morris had borrowed a breech loading shot gun,

[Bonner v. The State.]

which was again objected to on the grounds above set out.

The charge given by the court below, *ex mero motu*, is perfectly proper. Even if it were not, the exception to it is badly made as the objectionable parts are not specified.—*Irvin v. State*, 50 Ala. 181.

Charge number one, asked by the defendant was properly refused by the trial court. In view of lack of harmony in the evidence, the charge could not have been given.

The second charge was wisely refused. Chance is defined to be "the possibility of an occurrence", and a reasonable chance of mistake would mean a reasonable *possibility of* mistake, and that is not the measure of mental conviction that the law requires. The jury must believe beyond all reasonable doubt in the defendants innocence, before they can acquit. There must be something more than a mere possibility of innocence to entitle a prisoner to an acquittal.

Charge three is paradoxical and misleading. A reasonable doubt cannot be "slight and shadowy." In other words the Court below was asked to charge that if there was a slight doubt or a shadowy doubt, the jury must acquit.

Charge four is on the weight of the evidence. The Court could not charge that the evidence of conscious guilt could have but litle weight of itself, and should be received with great caution. When studied with the other attending and criminating circumstances, such evidence might have great weight with the jury.—*Blount, et al. v. State*, 49 Ala. 381; *McAdory, v. State*, 62 Ala. 154.

In the fifth head note to the case last cited, it will be seen "that it is in connection with the *other facts* that their" (the indications of consciousness of guilt) "value should be determined." Not alone, but with all the proofs.

Charge five is open to several objections. Besides being argumentative, it is not necessarily true that the absence of motive is a *strong* circumstance in defendants favor. The weight of the circumstance is a matter for the jury to determine. Beside the charge should not read "in connection with the other exculpatory evidence", but "in connection with the other *proofs*."—Am. & Eng. Ency. of Law, Vol. 15, page 936.

[Bonner v. The State.]

As a matter of fact the charge would have the jury consider the absence of motive in connection with the *exculpatory* evidence alone, to the exclusion of the *inculpatory* testimony, which is improper.

Charge sixth is plainly argumentative. In addition it lays too much stress on absence of motive, when the evidence discloses that malice, arising from the arrest of one of the Bonners, was the spirit actuating defendant in the commission of his crime. It gives too much prominence to a particular part of the testimony.

It is clearly within the power of the court to withdraw any charge which it may have given, even over the exception of the adverse party.

"A party to a cause after excepting to a charge as erroneous, will not be heard to complain because it was afterwards revoked and withdrawn from the jury."— *Sittig v. Birkestack*, 38 Md. 158.

"As to instructions of the court, they must be excepted to before the jury can deliver their verdict, as till then, if exception be made, the court can correct, or the adverse party can waive, and the jury can be correctly advised as to the law, and return to review their deliberations."—*Jones v. Van Patten*, 3 Ind. Porter, 111 ; and so the same is decided in *Hall v. The State*, 8 Ind. 440.

"The Court has power at any time during trial to modify instructions already given, or give or revoke them entirely, if upon reflection he conclude that they are erroneous."—Am. & Eng. Ency. of Law, Vol. II, page 256.

This charge, asked by the State and given by the Court, and afterwards withdrawn by the Court may be erroneous. If erroneous, it was not error to withdraw it. If the charge is correct in law, its withdrawal affirmatively benefits the defendant, as the record shows that the Court gave several charges at request of defendant on the question of reasonable doubt. In either event then its withdrawal cannot be complained of by defendant.—*Sheppard v. State*, 94 Ala. 102 ; *Reeves v. State*, 95 Ala. 31 ; *Marks v. State*, 87 Ala. 99.

McCLELLAN, J.—The evidence of Sam Key, an accomplice, was to the effect that he, Charley Morris and the defendant went to the house of the deceased, Andrew Higgins, at night for the purpose of rocking his house

and making him leave the country. It was shown that Side Higgins, a son of the deceased, lived there with his father. And that the conspirators went within 75 or 80 yards of the house and began throwing rocks at it, when Andrew Higgins came out of the house with his gun and fired it off, whereupon Charles Morris fired his gun at the deceased, witness "fired his gun in the air" and did not know which way the defendant fired his gun." Andrew Higgins fell dead and the three men left the place together. On the state of case thus presented by the evidence of Key, the testimony of the witness James Bell as to the conversation between the defendant and said Morris shortly before the homicide which he, Bell overheard was clearly relevant and competent. Bell testified that Morris and Bonner "were talking and said something about the Higginses, exactly what, he did not remember. Boge Bonner said that he guessed by the time it was got through with that Side Higgins would not want to have another one of the Bonners arrested; that there would go enough there to clean them up; that if there was a little powder and lead used in this neighborhood, then there would be peace and quiet. This evidence disclosed a motive on the part of Bonner for the offense charged. It showed a hostile and deadly animus not only against Side Higgins, but against the Higginses and a purpose to go to the house where Side and his father, the deceased, lived "and clean *them* up." And it supplied corroboration of the evidence of the accomplice Key in the matter of connecting the defendant with the homicide. This evidence was properly allowed to go to the jury. The evidence went to show a conspiracy between Bonner, Morris and Key to run off if they could, or kill if they could not run off, the Higginses, father and son. Key's testimony shows this. He is corroborated by the testimony of Bell. After this conspiracy was formed and the day before its purpose was in part consummated, two of the conspirators, Key and Morris borrowed a gun, such as was used on the occasion of the homicide, from one Davidson. Key testified that this gun was used on that occasion. The defendant objected to evidence of this fact on the ground that he was not present at the time nor shown to have known anything of the borrowing of the gun. The objection is untenable. On the familiar principle that the sepa-

[Bonner v. The State.]

rate and, as between themselves disconnected acts of conspirators in line with the common design and in furtherance of the conspiracy may be given in evidence against all and each of them, this evidence was relevant and competent.

The general charge of the court was given in writing. It covers the case pretty thoroughly and exhaustively, stating, of course, many distinct principles of law bearing on the case as presented to the jury, and expounding them concisely and correctly. The defendant excepted generally to the giving of this charge, the recital being: "The defendant excepted to the giving of the above charge." And this is all. No exception was reserved to any particular part of the charge, nor to any single principle or proposition laid down in it; but the exception went to it as a whole. It has been too often decided by this court, and the doctrine is too well grounded in reason, that a general exception to the charge given *ex mero motu* by the presiding judge will avail the defendant nothing unless every proposition stated therein is unsound and erroneous, to be now departed from, or overturned even had we no decisions on the point. And this case illustrates the necessity and wisdom of the rule. The reason underlying the principle—the theory upon which specific exceptions are required—is that if error has in fact been committed the exception reserved will point out the error to the presiding judge so that he may at once correct it. It is only upon this theory and for this reason that exceptions are required to be taken and noted at all; and but for this consideration the points relied on for a reversal in this court might well be made for the first time in this court. In the present case it is not insisted that any of the great number of abstract propositions laid down by the court are unsound; but only that in applying the law to this case the court omitted to hypothesise venue as one of the facts the jury should find before pronouncing the defendant guilty. It cannot be doubted that if the exception had indicated that part of the charge where the abstract law was applied with hypothesis to this case—a most natural and easy thing to have been done—the court would at once have noted the omission of a hypothesis of venue and have corrected it. But with this general exception, only, the court's atten-

tion was no more directed to that matter than any other of a score or more propositions stated in the charge; and as there appears to have been no issue made on the trial as to the venue, to sustain such an exception would be an especially pernicious violation of the rule requiring specific exceptions. It is untenable. The defendant in its reservation affirmed that the court's charge was bad in every principle it asserted. Whether it is bad in every doctrine expounded or not is the issue he presents in this. If thus vicious, he is entitled to a reversal. If not thus vicious, he is to cast on the issue and takes nothing by this exception. Confessedly the charge is sound in every proposition it advances except one; it is not bad as a whole. The exception must therefore be adjudged vain and abortive.

The general affirmative charge requested by the defendant was, of course, properly refused since, to say the least, the evidence tended to establish every fact essential to conviction.

We are not sure we know what is meant by the phrase, "reasonable chance of mistake" as used in defendant's second request. We are sure though that to be convinced beyond all reasonable chance of mistake is not the same thing as conviction beyond a reasonable doubt. "Chance" implies possibility and would probably have been so understood by the jury, and "reasonable possibility" is at last no more than a possibility, (*Sims v. State*, 100 Ala. 23) and it is not necessary to conviction that the evidence should exclude the possibility of the defendant's innocence.

Charges 4 and 5 refused to the defendant are invasive of the province of the jury, and for that, if not also for other reasons, were properly refused. The court cannot tell the jury that a certain fact should "weigh but little" against the defendant, or that a certain other assumed fact "is a strong circumstance in the defendant's favor."

Among other faults of the 6th charge requested by the defendant it is open to the criticism that it is a pure argument.

Charge 10 given at defendant's instance might well have been refused.—*Webb v. State*, MSS.

We do not think it error for the court to allow a party to withdraw a charge after the court has determined to give it and has so endorsed on the paper; it seems to us

[Bonner v. The State.]

that the case put is distinguishable from that of *Redus v. State*, 82 Ala. 53, which had reference to refused charges when the statute required them to be delivered to the jury. But even were we to concede that the court in this case committed an error in allowing the solicitor to withdraw the charge which he had requested and which had been duly endorsed and given to the jury, the concession would avail the defendant nothing. The charge itself was a sound exposition of the law in every respect. It proceeded on the State's theory of the case and was as favorable to the prosecution as the law admitted of its being. Had it been delivered into the hands of the jury, or, after being read, not been withdrawn by the court from their consideration its effect upon the jury would necessarily have been prejudicial to the defendant. So that if the court erred, it is clear that the error did not and could not have injured the appellant.

The judgment of the circuit court must be affirmed.